



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

REBBECCA SCALES,

               Plaintiff,

    v.

POKER POWER LLC

               Defendant.

Case No. 1:25-cv-07538

Judge: Honorable Franklin U. Valderrama

THIRD AMENDED COMPLAINT

Illinois State Law Claims Only – Against Defendant Poker Power LLC

Filed pursuant to Fed. R. Civ. P. 15(a)(1)(A) while Plaintiff's Motion to Remand is pending.

Defendant PEAK6 Investments LLC was voluntarily dismissed on July 29, 2025 (Dkt. #17) and

is no longer a party to this action. Plaintiff Rebbecca Scales, appearing pro se and as an

individual, submits this Third Amended Complaint against Defendant Poker Power LLC, and

alleges as follows:

I. PARTIES

1.  Plaintiff Rebbecca Scales is a resident of Nevada. She began working with Poker Power in

    2021 as an instructor under contracts misleadingly titled as independent contractor

agreements but functionally structured as employer-employee relationships under Illinois law.

2. Defendant Poker Power LLC is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

## II. JURISDICTION AND VENUE

3. Jurisdiction and venue are proper in this Court pursuant to 735 ILCS 5/2-101 because Defendant conducts business in Cook County, Illinois, and the events giving rise to this action occurred within this jurisdiction. This pleading is submitted in federal court while Plaintiff's Motion to Remand to the Circuit Court of Cook County is pending.

## III. NATURE OF CLAIMS (STATE LAW ONLY)

4. Plaintiff brings only Illinois state-law claims at this time and reserves the right to assert additional claims, including federal causes of action, in a separate proceeding after exhaustion of relevant administrative remedies.

## IV. FACTUAL ALLEGATIONS

5. Plaintiff was engaged as an instructor by Poker Power LLC under contracts that labeled her an independent contractor, despite the company exercising employer-level control over all aspects of her work, including scheduling, performance expectations, communications, and branding.

6. Defendant imposed rigid operational mandates, including forced red-eye travel, restricted rest between assignments, and non-negotiable scheduling demands. These practices worsened after Poker Power's leadership team departed in late 2023, initiating a prolonged "transition" period. During this time, Defendant claimed financial hardship while simultaneously hiring

almost three times as many high-paid Peak6 executives, doubling its instructor roster, and enforcing stricter policies that diminished instructor health, autonomy, and professionalism.

7. Defendant implemented a region-based pay model without prior notice or contractual integration, disadvantaging instructors based on their location despite equal qualifications and responsibilities. These changes were applied inconsistently and retroactively.

8. While Plaintiff remained under a valid one-year 2025 contract, Defendant simultaneously issued a second six-month agreement with identical terms, later using the six-month version in arbitration proceedings. Defendant never honored the six-month evaluation period or clarified which contract was operative. This contradictory conduct has resulted in confusion over which contract governs, and Defendant has strategically used the shorter version in arbitration to limit Plaintiff's rights.

9. In May 2025, Plaintiff was abruptly "paused" from communication and scheduling systems without any formal review, process, or cause. This was communicated publicly via Defendant's CEO Lisa McLafferty, causing Plaintiff reputational harm within the poker industry.

10. To retain instructors during this period of instability, Defendant offered optional "admin work" such as curriculum support, social media, marketing, logistics, and onboarding. These roles were presented as separate from instructional duties, offered at a non-negotiable $30/hour rate, and never formalized in contract despite instructors being asked to apply for them individually.

11. Plaintiff was required to complete expense reports, monitor Slack, coordinate logistics, and communicate with clients, all without compensation for time spent. Reports were sent to

Poker Power staff, including Alexa Yurick, and forwarded to Peak6 accounting, further blurring entity boundaries and raising issues of concealed employer identity.

12. Plaintiff was required to test, troubleshoot, and provide user feedback for the Poker Power mobile app, which instructors were expected to use in all live and virtual programming. Despite requests, Plaintiff and others were explicitly told this work would not be compensated. App updates publicly described instructors as the client-facing "controller" of user experience.

13. Poker Power failed to honor its contractual obligations, including the promised six-month review. Instead, Defendant used silence, administrative discretion, and legal threats to exclude Plaintiff from work without due process, while continuing to benefit from her reputation and labor.

14. In April 2025, Plaintiff suffered a physical injury while returning from a Poker Power event due to exhaustion caused by forced red-eye travel and lack of rest. Despite being visibly injured, she received no support or follow-up from Defendant. This injury was directly linked to the unsafe and unreasonable conditions imposed by Defendant's policies.

15. Plaintiff also made good-faith internal reports regarding misclassification, unpaid labor, and misuse of nonprofit and app-related labor structures. Defendant's response was retaliatory in nature, excluding her from assignments, revoking access to platforms, and refusing to provide basic documentation. These actions violated Illinois' whistleblower protections.

As a result of the above facts, Plaintiff suffered economic loss, reputational harm, exclusion from professional opportunities, and physical injury. Defendant's conduct gives rise to the following legal claims under Illinois law:

CAUSES OF ACTION

## COUNT I: MISCLASSIFICATION UNDER ILLINOIS COMMON LAW

16. Plaintiff realleges paragraphs 1 through 15 as if fully set forth herein.

17. Poker Power LLC misclassified Plaintiff as an independent contractor while maintaining control over all material aspects of her work, including rates, assignments, expectations, performance reviews, and travel. This level of control satisfies the "right to control" test recognized under Illinois law. See *Roberson v. Indus. Comm'n*, 225 Ill. App. 3d 1038 (1st Dist. 1992); *AFM Messenger Service, Inc. v. Dep't of Emp. Sec.*, 198 Ill. 2d 380 (2001).

18. This misclassification deprived Plaintiff of legal protections, wage laws, and remedies to which she was entitled under Illinois law.

## COUNT II: BREACH OF CONTRACT

Plaintiff realleges paragraphs 1 through 18.

19. Defendant breached its contractual obligations by failing to complete the promised six-month evaluation, refusing to honor the full-year 2024 agreement, and removing Plaintiff from access to systems and scheduling without cause or process.

20. Defendant's informal "pause" of Plaintiff and refusal to provide contract copies or proper communications constitutes a breach of the 2025 contract. Illinois recognizes a claim for breach of contract where there is a valid agreement, performance by the plaintiff, breach by the defendant, and resulting damages. See *Burkhart v. Wolf Motors of Naperville, Inc.*, No. 05 C 0956, 2005 WL 1705954 (N.D. Ill. July 15, 2005).

## COUNT III: UNJUST ENRICHMENT

Plaintiff realleges paragraphs 1 through 20.

21. Defendant benefited from Plaintiff's uncompensated labor related to the mobile app, curriculum development, client experience, internal logistics, and other functions, including administrative and marketing duties.

22. Defendant's retention of this benefit without fair compensation constitutes unjust enrichment. See *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (unjust enrichment occurs when one party retains a benefit to the detriment of another and it would be unjust to allow retention without compensation).

## COUNT IV: RETALIATION AND REPUTATIONAL HARM

Plaintiff realleges paragraphs 1 through 22

23. After raising internal concerns about labor conditions and pay transparency, Plaintiff was excluded without cause and later publicly named in correspondence from legal counsel.

24.  Defendant's decision to pause and exclude Plaintiff coincided with the hiring of less experienced instructors and harmed her professional standing.

25. These acts constitute retaliation and reputational harm under Illinois law, including protections against retaliation under the Illinois Human Rights Act, 775 ILCS 5/6-101(A), which prohibits retaliatory conduct for opposing unlawful practices.

## COUNT V: NEGLIGENCE AND INJURY ARISING FROM UNSAFE CONDITIONS

Plaintiff realleges paragraphs 1 through 25.

26. Defendant knowingly imposed unsafe and unreasonable travel mandates, including forced red-eye flights with insufficient rest, creating hazardous conditions for instructors.

27. As a result of these conditions, Plaintiff sustained a physical injury in April 2025 while returning from a company event.

28. Defendant failed to offer any support or accommodation following the injury, further aggravating its impact and demonstrating negligence. Illinois courts recognize a duty of care in employer-initiated circumstances where injury is reasonably foreseeable. See *Ward v. K Mart Corp.*, 136 Ill. 2d 132 (1990).

COUNT VI: RETALIATION UNDER THE ILLINOIS WHISTLEBLOWER ACT

Plaintiff realleges paragraphs 1 through 28.

29. Plaintiff made protected internal disclosures about violations of labor laws, including misclassification, unpaid labor, and misuse of nonprofit and tech-related structures.

30. Defendant retaliated by excluding her from opportunities, locking her out of internal systems, and using procedural ambiguity to avoid responsibility.

31. These actions constitute unlawful retaliation under the Illinois Whistleblower Act, 740 ILCS 174/1 et seq.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award compensatory damages for lost income, injury, and reputational harm;

2. Award punitive damages where appropriate.

3. Declare that Plaintiff was misclassified under Illinois law;

4. Order Defendant to provide a full accounting of labor assignments, app development use, and contract history;

5. Grant such other relief as this Court deems just and proper.

6. Declare that any non-disclosure agreements, non-compete clauses, or restrictive covenants imposed by any version of Plaintiff's contracts are unenforceable due to

misclassification, procedural unconscionability, lack of mutual assent, and concealment of legal employer identity

7. Issue an order staying all arbitration proceedings, including JAMS Ref. No. 5340001692, pending resolution of Plaintiff's Motion to Remand and any jurisdictional determinations by this Court

Respectfully submitted,

/s/ Rebbecca Scales

Rebbecca Scales

Plaintiff, Pro Se

1700 Charles Lam Ct

Las Vegas, NV 89117

rscales@womenpokernews.com

725-200-6938

Dated: July 31, 2025